**Dee FARMER, Petitioner–Appellant,**

v.

**CIRCUIT COURT OF MARYLAND FOR BALTIMORE COUNTY; Attorney General of the State of Maryland; Richard H. Rison, Respondents–Appellees.**

No. 92–6299.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 9, 1993.

Decided Aug. 8, 1994.

**ARGUED:** Henry Mark Stichel, Piper & Marbury, Baltimore, MD, for appellant. David Phelps Kennedy, Office of the Atty. Gen., Baltimore, MD, for appellees. **ON BRIEF:** Karen M. Valentine, Piper & Marbury, Baltimore, MD, for appellant. J. Joseph Curran, Jr., Atty. Gen. of Maryland, Kathryn Grill Graeff, Asst. Atty. Gen., Office of the Atty. Gen., Baltimore, MD, for appellees.

Before HALL and MURNAGHAN, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Circuit Judge PHILLIPS wrote the opinion, in which Circuit Judge K.K. HALL and Circuit Judge MURNAGHAN joined.

## OPINION

PHILLIPS, Circuit Judge:

When Dee Farmer,[1] incarcerated in federal prison, sought to pursue Maryland post-conviction relief proceedings to challenge two state convictions, the Maryland courts refused to entertain her petitions because she could not appear personally in the proceedings. When she then petitioned for federal habeas relief and sought to be excused from the state remedies exhaustion requirement or to be considered to have met the requirement because of the impossibility imposed by Maryland's position, the federal district court dismissed her petition for failure to exhaust, declining to consider that she had effectively exhausted her remedies or to excuse the failure, on the authority of our decision in *Whittlesey v. Circuit Court for Baltimore County*, 897 F.2d 143 (4th Cir.1990). Because we conclude that *Whittlesey* is factually distinguishable in critical respects, hence not controlling, and that the district court therefore erred in dismissing on its authority for failure to exhaust, we vacate and remand for further proceedings.

### I.

During 1986, Farmer was convicted of a number of federal and state crimes committed in the State of Maryland. The interrelated consequences of those convictions gave rise to the issues presented in this case.

On May 7, 1986, Farmer was convicted by a jury in Maryland state court of theft, forgery, and related offenses. (Case No. 85–CR–3221). On May 23, 1986, she pled guilty in United States District Court for the District of Maryland to two counts of credit card access device fraud. On June 23, 1986, she was sentenced on the federal conviction to a total of twenty years imprisonment. On July 30, 1986, she was sentenced on her Maryland conviction in No. 85–CR–3221 to fifteen years imprisonment, consecutive to her twenty-year federal sentence. On the same date, July 30, 1986, she was convicted in Maryland state court, pursuant to an agreed statement of facts, of giving a false statement to a police officer, (Case No. 86–CR–3175) and of theft. (Case No. 86–CR–3966). In No. 86–CR–3175, the false statement case, she was sentenced to fifteen years imprisonment consecutive to the twenty-year federal sentence and to the fifteen-year state sentence in No. 85–CR–3221; and in No. 86–CR–3966, to one year for her theft conviction, concurrent to the other state sentences.[2] The net effect of all this was the imposition of a thirty-year state sentence consecutive to the federal twenty-year sentence.

Incarcerated in federal prison on her twenty-year federal sentence, Farmer began in 1988 a series of *pro se* state and federal collateral attacks on the two state convictions upon which her combined thirty-year sentences consecutive to the federal sentence were based.[3]

A first federal habeas petition, filed on July 11, 1988, sought to challenge the imposition of state sentences consecutive to the federal and the state courts' jurisdiction. It

1. Dee Farmer was convicted of the state crimes at issue here under the name Douglas Farmer. Prior to conviction, Farmer discovered himself to be a transsexual: "a person with a psychological urge to belong to the opposite sex that may be carried to the point of undergoing surgery to modify the sex organs to mimic the opposite sex." Webster's 1255 (9th ed.1991). Farmer had, in fact, begun the process of becoming a woman at 14, when he underwent estrogen therapy and had silicone breasts implanted. Because Farmer has not completed sexual reassignment, federal and state officials apparently refer to Farmer using male pronouns, and, more importantly, house Farmer with male prisoners. See *Farmer v. Brennan*, —— U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Farmer v. Haas*, 990 F.2d 319 (7th Cir.1993). This opinion, in accord with Farmer's preference, will use feminine pronouns.

2. This last conviction and sentence are not now involved in any way with the instant case, and so pass at this point from the account. Two successive federal habeas petitions challenging it were dismissed, the first for failure to exhaust, J.A. 60–62, and the second, for mootness. J.A. 218–19. Neither is challenged in this case.

3. While the two state cases were sometimes confused both by Farmer in her challenging papers and the Maryland state courts in their processing, all parties are agreed that for purposes of this appeal, the several collateral attacks, including the instant one, are properly considered as going to both state cases, *i.e.*, Nos. 85–CR–3221 and 86–CR–3175.

was dismissed on the merits on August 18, 1988. No further proceedings on it were taken.

A second federal habeas petition, again seeking to challenge the imposition of consecutive state sentences and adding claims of involuntariness of her guilty (agreed statement) plea, and of conviction for uncharged crimes, was filed on December 11, 1988. A Magistrate Judge recommended that it be dismissed without prejudice for failure to exhaust, on June 5, 1989.

Immediately after the filing of this recommended disposition of her second federal habeas petition, Farmer resorted to the Maryland state courts in a persistent series of efforts to exhaust her state remedies. On July 18, 1989, she filed a petition for postconviction relief (styled "Habeas Corpus") in Maryland state court, claiming involuntariness of her guilty plea, and conviction on improper evidence. This petition was dismissed on July 28, 1989, on the grounds that Farmer lacked standing, being then confined for her federal conviction, not for the state conviction she sought to challenge.

Faced with this fundamental barrier to exhausting state remedies, Farmer took a detour back into the federal courts to seek a way around it. In a civil rights action filed on October 10, 1989, and later amended, she challenged the constitutionality of the state's postconviction procedure on the basis that, as applied by the lack-of-standing ruling, it denied her access to the courts.

While this action was pending, she returned to the state courts with a second petition for post-conviction relief filed on December 19, 1989. In this, she sought to challenge the state court's earlier lack-of-standing ruling on the basis of *dicta* in a recent state appellate court decision, and added a claim of denial of counsel in Case No. 86–CR3175 (the false statement case).

A hearing on this state court petition was set for March 27, 1990 to consider the challenge in No. 85–CR–3221. Farmer, then incarcerated in the federal penitentiary at Terre Haute, Indiana, requested that the state court order that arrangements be made to transport her at state expense to Maryland for appearance at the hearing. The request was denied. On the date set for the hearing, the state court dismissed the petition without prejudice, because Farmer was not present, on the basis that because Rule 4–406(d) of the Maryland Rules of Procedure in Post–Conviction Proceedings gives a petitioner the right to be present, the court could not proceed without her presence. The same course was followed when Farmer could not appear at a separate hearing set for April 24, 1990, to consider the challenge in Case No. 86–CR–3175. Farmer was then advised that the hearing in this latter case would be reset at her request whenever she could personally appear, and that she should seek the services of a public defender. Shortly thereafter, the state court struck its March 27, 1990 order dismissing the petition in No. 85–CR–3221, revising it to conform to its order of "postponement-until-petitioner-can-appear" advice to Farmer in respect of Case No. 86–CR–3175. An attempted appeal from that order was dismissed by the Maryland Court of Special Appeals on May 17, 1990, because the order was not a final judgment.

Faced with this impasse, Farmer then petitioned the Maryland trial court for a Writ of Mandamus compelling a hearing on her postconviction petitions. This was denied on February 5, 1991.

In the meantime, back in federal court, Farmer had lost on her second habeas petition and was soon to lose on her civil rights action challenging Maryland's post-conviction procedures as denying her access to the courts. As had been recommended by the Magistrate Judge, Farmer's second federal habeas petition was dismissed on September 21, 1990, for failure to exhaust. In its decision, the district court expressly rejected Farmer's claim that exhaustion should be excused because of its impossibility under Maryland's position that it could not entertain her post-conviction relief petition unless she was personally present. The district court thought this position compelled by our decision in *Whittlesey v. Circuit Court for Baltimore County*, 897 F.2d 143 (4th Cir. 1990). Relying on the same authority, the district court later dismissed her civil rights action (treated as effectively one seeking habeas relief) on June 11, 1991.

Farmer then returned once again to the federal district court, filing a third habeas corpus petition on February 5, 1992. In this

petition—the one now before us—she claimed: (1) involuntariness of her guilty plea (agreed statement) in No. 86–CR–3175; (2) denial of right to counsel in that case; (3) ineffective assistance of counsel; and (4) imposition of sentence for an offense other than that charged and upon impermissibly considered information. Without requesting any response from the state, the district court dismissed this petition on February 7, 1992, again for failure to exhaust, and again on the basis that, under *Whittlesey*, exhaustion was not excused by virtue of Farmer's inability to pursue state post-conviction relief while incarcerated in federal prison.

This appeal followed.

## II

The issue is whether Farmer's futile efforts to pursue post-conviction relief in the Maryland courts should be treated as effective compliance with the exhaustion requirement or, what comes to the same thing, whether compliance should be excused in view of Maryland's refusal to entertain her post-conviction petitions until she is able to appear personally in the proceedings. There is no doubt that unless somehow she is freed up from this requirement, she is effectively precluded from seeking federal habeas relief so long as she is incarcerated in federal custody. As indicated, the district court thought that our decision in *Whittlesey* controlled and required that the impasse must remain.

We think *Whittlesey* does not control, being factually distinguishable in critical respects. Reliance upon it as determinative of the matter was therefore misplaced, and the outright dismissal based upon it was error.

In *Whittlesey,* a federal habeas petitioner had been convicted in Maryland state court and sentenced to fifteen years imprisonment. After serving two years of that sentence, during which he made no effort to challenge his conviction or sentence, he escaped and fled to Florida. There he committed several crimes for which he was convicted and sentenced to a 136–year prison term. While serving his Florida sentence, he filed a petition for post-conviction relief from his Maryland conviction and sentence in the appropriate Maryland state court. At that point, he ran into exactly the same problem that has stymied Farmer. The Maryland courts declined to entertain his petition so long as he could not appear personally in their proceedings. Under the state's post-conviction procedural rules, he had a right to appear personally, hence, under the view taken by the Maryland courts, they could not proceed without his presence. When he then sought federal habeas relief, contending that he should be excused by virtue of the state's position, his petition was dismissed and excuse denied by the district court, for failure to exhaust.

A divided panel of this court affirmed. Analyzing the issue in light of the basic principles of comity that the exhaustion requirement is designed to serve, the majority opinion emphasized two principal reasons why exhaustion should not be excused despite the futility created by the state's position. First, the fact that the petitioner had effectively created the situation giving rise to the impasse by the very act of escaping from Maryland custody. *See Whittlesey,* 897 F.2d at 145 ("Whittlesey cannot expect federal courts to rescue him from the consequences of his escape and subsequent commission of crimes."); *id.* at 145–146, n. 1 ("no worse breach of comity than forcing a state to secure the presence of one who had escaped from state custody in order to rule on his dilatory claim or, in the alternative, for a federal court to proceed without the benefit of state views and findings"). Second, that for the two years of his Maryland incarceration before his escape, Whittlesey had failed to challenge his conviction, as he was free to do, either by direct appeal or collateral proceedings. *Id.* at 144.

Neither of these comity concerns applies to Farmer's situation.

Her inability to attend Maryland proceedings does not result from her voluntary departure from that jurisdiction by escaping from its lawful custody. She does not therefore seek, as did Whittlesey, to force a state to secure the presence of one who has escaped from its custody in order to rule on her claim against that state. It is true that her inability to attend Maryland proceedings does result immediately, just as did Whittlesey's, from her incarceration by another sovereign, but hers is simply the result of sentencing sequence, not of a deliberate free

choice to remove her presence from the jurisdiction that now requires it.

Nor has she deliberately foregone, as had Whittlesey, an opportunity while in Maryland custody to seek post-conviction relief in its courts. She has never been in Maryland custody with the opportunity thereby presented.

These two differentiating factors are not merely academic ones, they go to the heart of the comity concerns underlying the exhaustion requirement. Comity does not require that Farmer, like Whittlesey, have no recourse but to await her release from imprisonment by another sovereign in order to pursue post-conviction relief in Maryland's courts. For the Maryland courts to be required to accord her a fair opportunity to do so despite her inability to be personally present would not constitute the affront to state sovereignty interests that we thought were present in *Whittlesey*. *See Word v. North Carolina*, 406 F.2d 352, 356 & n. 4 (4th Cir.1969) (en banc) (Haynsworth, C.J.) (obligation of non-custodial state to provide effective means of exhaustion to inmate confined in custodial state assumed as essential to availability of federal habeas corpus remedy and as conformable to comity concerns).

With these specific comity concerns out of the way in this case, Farmer contends that we should treat her diligent, though unavailing, efforts to exhaust her state remedies as effective exhaustion, or, alternatively, should treat any need for further efforts as excused by the state's position which demonstrably makes them futile. In her view, she has given Maryland all the opportunity which comity and its child, the exhaustion requirement, require.

There is of course authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance. *See, e.g. Harris v. Champion*, 15 F.3d 1538 (10th Cir.1994); *Workman v. Tate*, 957 F.2d 1339 (6th Cir.1992).

There is, arguably, a case for doing so here. Maryland's refusal to entertain Farmer's post-conviction petitions until she can be personally present is the immediate cause of an impasse which blocks Farmer's ability to attack her state convictions in either state or federal court. It is possible that the state's position is not a legally tenable one: it relies on the fact that its procedural rules give Farmer a *right* to be personally present to justify its refusal to entertain her petition when she cannot be. It points out that Farmer has never formally waived that right, and that is correct. On the other hand, it has never indicated to Farmer that it would entertain her petition if she did waive, nor how it was prepared to entertain it while she could not be personally present. So the impasse deepens.

On balance, however, we do not think the state's position so completely lacking in justification, or so arbitrary, as to warrant flat excuse of the exhaustion requirement at this point. Though Farmer is not a Whittlesey completely undeserving of any accommodation of the state's position, there do remain legitimate state comity interests to be observed. We think the state's unwillingness to proceed in the absence of a formal waiver of Farmer's right under its law to be personally present cannot be dismissed out of hand. To waive it is a simple matter if Farmer desires to do so in order to proceed now rather than later with exhaustion of state remedies. For its part, the state is entitled to a formal waiver as a condition to proceeding in order to avoid any later challenge on that score to its proceedings. It is also entitled to know, as an adjunct to any waiver of personal appearance given by Farmer, exactly what alternative procedures to personal appearance Farmer is willing to accept: whether by proceeding on depositions, interrogatories, affidavits, etc. *See* Rule 4–406(c), Maryland Rules of Procedure in Post–Conviction Proceedings (authorizing such procedures).

On the other side, in a fair balance of the competing interests, if Farmer were formally to waive her right to personal appearance and to identify acceptable alternative procedures, she is entitled to an immediate indication from the state whether it is prepared to entertain her petition on any of the alternative procedures proposed, and to a prompt proceeding under any procedure agreed to. If the state declines unreasonably to proceed under such a waiver and on any reasonably proposed alternative procedures, Farmer is

entitled to be excused from the federal exhaustion requirement.

To implement the remedy thus suggested, we will adopt in general the procedure followed by the Eleventh Circuit in *Cook v. Florida Parole and Probation Comm'n.*, 749 F.2d 678 (11th Cir.1985).

The judgment of the district court dismissing Farmer's petition under 28 U.S.C. § 2254 for failure to exhaust will be vacated, and the case remanded for further proceedings as follows:

1. By whatever means it deems suitable, the district court will inform the parties that within a specified time Farmer may, if so disposed, formally waive in writing her right under Maryland law to appear personally in any proceedings for post-conviction relief in the courts of Maryland, and that if she does so waive, she must also indicate in writing all modes of procedure not involving her personal appearance that are acceptable to her for processing her petition for post-conviction relief.[4]

2. Similarly, the court will inform the parties that if within the specified time Farmer does properly waive her right and identify acceptable procedures, the state must within a specified time indicate whether it agrees to entertain Farmer's petition and identify the procedure[s] for its conduct to which it agrees.

3. If within the time specified for waiver Farmer does not properly waive or identify appropriate alternative procedures, the district court may then dismiss her petition for failure to exhaust state remedies.

4. If, following a proper waiver and identification of appropriate alternative procedures by Farmer, the state fails within the specified time to agree to entertain Farmer's petition under any of the proposed alternative procedures, or, having agreed, fails thereafter to proceed promptly to entertain the petition, the district court may enter an order excusing further efforts to exhaust state remedies, and should thereupon entertain Farmer's pending petition for habeas corpus relief under 28 U.S.C. § 2254.

5. In implementing the above procedure, the district court will exercise its discretion in determining the respective parties' compliance with its conditions, including the appropriateness of any alternative procedures proposed by Farmer for conducting post-conviction proceedings.

*SO ORDERED.*[5]

---

4. We assume that, pursuant to state law, *see* Md.Ann.Code art. 27 § 645A(f) (1993), and to the state's representation to Farmer, *see* J.A. 243, Farmer is entitled to state public defender assistance in preparing the necessary papers to indicate waiver and to identify appropriate alternative procedures.

5. The state has raised for the first time on this appeal the alternative defenses of procedural default and successiveness of writs as bases for affirming the district court's dismissal of Farmer's petition. Those defenses are not properly raised at this point, not having been raised in the district court. They may of course be raised if and when the district court again considers Farmer's federal habeas petition.